UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

PAUL J. BROWN, )
 )
    Plaintiff, )
 ) CIVIL ACTION NO.
v. ) 5:08-CV-073
 ) ECF
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
    Defendant. )

# **REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Paul J. Brown seeks judicial review of a decision of the Commissioner of Social Security, Michael D. Astrue, denying his application for disability insurance benefits for the period of October 21, 2000, through December 31, 2001. The United States District Judge reassigned this case to the United States Magistrate Judge for further proceedings. Brown did not consent to the jurisdiction of the court. According to the order reassigning this case, the undersigned now files this Report and Recommendation. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand the Commissioner's decision.

## I.    **STATEMENT OF FACTS**

Brown was born on August 2, 1947, and has a high school education. (Tr. 686.) For almost twenty years, until 1995, he worked for Atmos Energy as a service technician. (Tr. 81, 685-86.) Brown testified that he was responsible for setting and reading meters,

changing pressure charts, and collecting payments. (Tr. 687.) Brown has alleged disability on account of osteoarthritis, degenerative spine disease, heart problems, high cholesterol, vision problems (blepharospasm[1]), and carpal tunnel syndrome for which he has undergone two surgeries. (Tr. 72, 686.)

Brown's application was denied initially (Tr. 21-25) and on reconsideration. (Tr. 28-31.) The Administrative Law Judge (ALJ) found Brown unable to perform his past relevant work, but concluded that he could make an adjustment to other work. (Tr. 17.) Brown sought Appeals Council review and the Appeals Council vacated the decision and remanded the case to the ALJ. (Tr. 496-99.) The Appeals Council ordered the ALJ to further evaluate Brown's residual functional capacity (RFC) including all exertional and nonexertional limitations, evaluate treating and examining source opinions in accordance with applicable law, and explain the weight given to such opinion evidence. (Tr. 497-98.) Moreover, the Appeals Council noted that "a severe vision problem was found but no nonexertional visual limitations were assessed." (Tr. 497.)

A new hearing was held on May 2, 2006 with a different ALJ. (Tr. 682-703.) Brown was represented and testified (Tr. 686-98), his wife, Gracie Brown, testified (Tr. 698-99), and a Vocational Expert (VE) also testified (Tr. 699-703). In his decision, the ALJ found that Brown could make an adjustment to other work and denied benefits. (Tr. 480-81.)

---

[1] Blepharospasm is the involuntary spasmodic contraction of the orbicularis oculi muscle- muscles around the eye; it may occur in isolation or be associated with other contractions of facial, jaw, or neck muscles. STEDMAN'S MEDICAL DICTIONARY, at 212 (27th ed. 2000).

The Appeals Council subsequently denied Brown's request for review. (Tr. 430-32.)

## II. DISCUSSION

In reviewing a determination by the Commissioner of Social Security, the court is limited to two issues: "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). The Supreme Court has defined "substantial evidence" as more than a scintilla and less than a preponderance. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence "is of such relevance that a reasonable mind would accept it as adequate to support a conclusion." *Falco*, 27 F.3d at 162.

### A. Vocational Expert Testimony

Brown contends that the VE's testimony is unreliable because the hand activities demanded in the occupations named by the VE exceed Brown's hand limitations as identified by the ALJ. He argues that a conflict between the VE's testimony and Dictionary of Occupational Titles (DOT) must be resolved before the VE's testimony can support a finding that the claimant is "not disabled." The Commissioner contends that the VE's testimony is reliable and that if the ALJ erred then the error was harmless because it is clear from the decision that the ALJ considered all of the relevant evidence.

The District Court has "held that an erroneous characterization of a job's exertional requirements would call into question the reliability of the vocational expert's testimony and that an unexplained discrepancy between the ALJ's residual functional capacity and the

3

definition of the identified jobs in the DOT would necessitate remand." *Lopez v. Astrue*, No. 5:07-CV-169-C, 2008 WL 1820584 * 4 (N.D. Tex. April 23, 2008) (explaining *Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000). *See also* SSR 00-4p (stating that an ALJ must elicit a reasonable explanation for discrepancies before relying on vocational expert evidence).

Brown testified that he has had problems with his hands since 1991. (*See* Tr. 692-93.) He testified that he would have a hard time picking up screws and bolts, or putting pressure on something, and would drop things. (Tr. 692.) Brown also testified that during the period of alleged disability he was able to mow the yard some, do dishes, clean house the best he could, drive, and use his hands to hold a cup or glass. (Tr. 690.)

Based upon a hypothetical question from the ALJ that restricted the individual to occasional use of his hands, the VE testified that an individual of Brown's age, education, work experience, and limitations could perform the work of a folding machine operator, machine tender, and continuous-towel roller. (*See* Tr. 699-700.) The VE testified that the identified jobs would require flexing of the wrists and "occasional" (less than a third of the day or time) reaching and handling. (Tr. 701.) The VE also testified that "occasional" reaching and handling would be involved in all three of the jobs identified. *Id*. However, the DOT states that the jobs of folding machine operator and continuous-towel roller involve "frequent" (existing from one-third to two-thirds of the time) reaching and handling. DICOT 208.685-014, 1991 WL 671754, at * 3 and DICOT 361.685-014, 1991 WL 672986, at * 3. As this court found in *Lopez*, the DOT contains a number of jobs with "machine tender" in their title," which "are characterized as medium and heavy work." *Lopez*, 2008 WL

1820584, at * 3. One job, a looming winder tender, is characterized as light work, but requires frequent/repetitive use of the hands. *Id*.

The ALJ did not attempt to resolve the conflict between the VE's testimony and the information in the DOT, and as a result the conflict remains. Remand is therefore required on this point.

### B. <u>Treating Opinion</u>

Brown contends that the ALJ failed to apply the appropriate standard in rejecting the medical opinion of treating ophthalmologist, Douglas E. Kopp, M.D., that working with machines posed a danger to Brown. He asserts that in cases in which the ALJ determines that a treating physician opinion is not entitled to considerable weight, the ALJ must analyze that opinion under the factors in 20 C.F.R. § 404.1527(d) or show good cause for not giving them considerable weight. Brown claims he was prejudiced by the ALJ's rejection of Dr. Kopp's opinion. He asserts that if the ALJ had properly weighed and adopted Dr. Kopp's opinion that working with machines poses a danger to Brown then the ALJ would have found him unable to perform any of the jobs named by the VE (machine tender, folding machine operator, and towel rolling machine operator). The Commissioner contends that the ALJ was not required to specifically address the § 404.1527(d) factors because the ALJ relied upon all of the medical reports submitted by Dr. Kopp.

In *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit Court of Appeals

held that an ALJ is required to consider each of the § 404.1527(d) factors[2] before declining to give any weight to the opinions of a claimant's treating specialist. *Newton*, 209 F.3d at 456. In his decision, the ALJ stated, "In June 1994, the claimant began treatment for uncontrolled eyelid closure diagnosed as benign essential blepharospasm, and although treating physician Dr. Douglas Kopp initially provided some limitations, in April 2001 he opined that the claimant's visual acuity did not indicate any potential disability." (Tr. 477 (internal citations omitted).)

The ALJ's decision only references part of Dr. Kopp's 2001 opinion. (*See* Tr. 239.) Dr. Kopp's opinion included "visual acuity does not fairly indicate any potential disability from this problem." (Tr. 239.) In the next sentence Dr. Kopp states that "[t]here is no question that there are times when Brown is unable to open his eyes and at those times his vision is, of course, extremely poor. This problem is not going to resolve and he will continue to need ongoing treatments on a very regular basis for the remainder of his life." (Tr. 239.) This statement is similar to Dr. Kopp's 1996 statement that Brown had "a significant and unpredictable amount of time when he is essentially blind due to eyelid closure. Working with machines, at height, and driving are potentially dangerous for him." (Tr. 267.) In both statements Dr. Kopp reported that there are times when Brown is unable

---

[2] "Specifically, this regulation requires consideration of: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." *Newton*, 209 F.3d at 456.

to open his eyes. (*See* Tr. 239, 267.) Although Dr. Kopp does not specifically address working with machines in his 2001 statement, this can be explained by looking at both statements in whole. *Id.* In the 1996 statement, Dr. Kopp was responding to a question asking whether Brown could return to work, in contrast to the 2001 statement, where Dr. Kopp wrote a general letter to the Texas Rehabilitation Commission. *Id.*

The ALJ did not consider the § 404.1527(d) factors before declining to give any weight to the opinion of Brown's treating ophthalmologist that working with machines posed a danger to Brown. (*See* Tr. 472-81.) In addition, the ALJ did not explain the weight given to Dr. Kopp's opinion as ordered by the Appeals Council. (*See* Tr. 498 (ordering the ALJ to explain the weight given to treating, examining, and nonexamining source opinion).) As in *Newton*, it can be said here that "[a]t best, the record was incomplete," and clarification or supplementation could have been provided on whether working with machines still posed a danger to Brown. *Newton*, 209 F.3d at 458; (Tr. 498 (stating in the Appeals Council's Remand Order that the ALJ may request the treating source to provide additional evidence and/or further clarification of his opinion).) This court therefore recommends that the district court reverse the decision and remand this case to the Commissioner for further proceedings.

C. **Severe Impairment**

Brown also contends that the ALJ applied an improper legal standard in finding Brown's blepharospasm not severe. Because it is the recommendation of the court that the case be remanded on the foregoing points, the issue of whether Brown's blepharospasm is a severe impairment should be re-examined as well.

7

## III. **RECOMMENDATION**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Brown's case for further administrative proceedings.

## IV. **RIGHT TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain *de novo* review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: January 29, 2009.

NANCY M. KOENIG
United States Magistrate Judge